JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1009 | **DATE** | 3/12/2001 |
| **CASE TITLE** | Mary F. McGauhey vs. William A. Halter | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court finds that the ALJ's finding that Plaintiff is not disabled is not supported by substantial evidence. Accordingly, the Commissioner's Motion for Summary Judgment (15-1) is denied. The Plaintiff's Motion for Summary Judgment (10-1) is denied in part and granted in part. This case is remanded to the Commissioner. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

*whd*
VKD
courtroom deputy's initials

2
number of notices

MAR 13 2001
date docketed

CM
docketing deputy initials

Document Number

21

3/12/2001
date mailed notice

Date/time received in central Clerk's Office

VKD
mailing deputy initials

DOCKETED

MAR 1 3 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARY F. McGAUHEY | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 00 C 1009 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge |
| WILLIAM A. HALTER[1], | ) | Arlander Keys |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Mary F. McGauhey, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) (West 2000), moves this Court for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure reversing the decision of the Commissioner of Social Security ("Commissioner") which denied her application for Disability Insurance Benefits. The Commissioner has filed a Cross-Motion for Summary Judgment in his favor. For the reasons set

---

[1] On January 20, 2001, William A. Halter became Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d)(1) and the last sentence of 42 U.S.C. § 405(g), William A. Halter is automatically substituted for Kenneth S. Apfel as the Defendant in this civil action, and no further action is necessary to continue this case.

-1-

21

forth below, the Court grants the Plaintiff's Motion in part and denies the Commissioner's Motion. Specifically, the Court remands this case to the Commissioner for proceedings not inconsistent with this opinion.

## Procedural History

Plaintiff, Mary McGauhey, filed an application for Social Security Disability Insurance Benefits on February 18, 1997, alleging that she was disabled and had been unable to work since July 3, 1996. (R. 70-72.)[2] The Commissioner denied her request for benefits on June 6, 1997, and again on July 15, 1997, upon reconsideration. (R. 61, 66.) Plaintiff requested a hearing on the matter before an Administrative Law Judge ("ALJ") on August 7, 1997. (R. 69.) On March 11, 1998, ALJ John L. Mondi conducted a hearing at which Plaintiff, Plaintiff's husband, and Vocational Expert ("VE") Edward Steffan testified. (R. 32-58.)

On May 1, 1998, the ALJ concluded that, despite Plaintiff's impairments, she did possess the residual functional capacity ("RFC") to return to past relevant work, and therefore was not

---

[2] All references are to the certified record prepared by the Commissioner and filed with this Court pursuant to 42 U.S.C. § 405(g).

suffering from a disability as contemplated by the statute. (R. 14.) Accordingly, he denied her request for SSI disability benefits. *(Id.)*

On May 22, 1998, Plaintiff filed a Request for Review of Hearing Decision. (R. 8-9.) The Appeals Council denied review on December 20, 1999. (R. 4.) Plaintiff filed a complaint for judicial review of the Appeals Council decision on Feb 18, 2000. Plaintiff and Defendant filed Motions for Summary Judgment on May 25, 2000, and July 27, 2000, respectively. These cross-motions for summary judgment are the subject of this opinion and order.

## Factual Background

Plaintiff, Mary McGauhey, was born on January 23, 1941 and was 57 years old at the time of the ALJ's decision. (R. 35.) She possesses a college degree in secretarial science and has worked as a secretary, bookkeeper or administrative assistant for nearly 25 years. (R. 114.) She was most recently employed in a full-time capacity as a Marketing Assistant at Popp Telecom, where she worked from May 1993 through July 1996. *(Id.)*

Although she has worked "on and off" at a number of temporary positions since July 1996, Plaintiff contends that she has been unable to work full-time because of symptoms associated with

Fibromyalgia. (R. 37.) Fibromyalgia is a "chronic condition that causes fatigue and widespread pain throughout much of the body." (R. 200); (citing Mary Anne Saathoff RN, BSN, *The Fibromyalgia Syndrome*, at 3 (1991)). In addition, "[i]ts cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

At the ALJ hearing on March 11, 1998, Plaintiff testified that, although she was diagnosed with Fibromyalgia eight years earlier, it was only in July 1996 that the affliction became so severe that she was unable to work consistently. (R. 46.) Plaintiff further testified that she experiences pain in "both sides of [her] neck, and it can go up into [her] head causing really bad headaches [also in] both shoulders, both arms, the upper part of [her] back, the lower part of [her] back, [her] legs." (R. 46.) She also complained of muscle spasms, as well as difficulty walking, bending, stooping or climbing stairs. (R. 39-40.) Plaintiff testified that she cannot stand or sit for more than 15 minutes at a time without having to change positions, and that she can only walk for 10 minutes at a time. *(Id.)* She also reported that she can spend about 45 minutes shopping at the grocery store,

but becomes tired easily and must lie down for about 30 minutes upon returning home. (R. 52.)

A. <u>Medical History</u>

Plaintiff underwent physical therapy for the symptoms associated with her Fibromyalgia from December 1996 through March 1997 at Concord Physical Therapy in Wheaton, Illinois. (R. 171.) According to Physical Therapist Janice Hussong, Plaintiff complained of muscle spasms, as well as pain and tightness, especially in her head and neck. (R. 171.) Plaintiff rated both the intensity and the frequency of her pain as an eight on a one-to-ten scale. (R. 172.) Ms. Hussong described Plaintiff's range of motion in her limbs and torso as either "limited," "severely limited" or "functional but painful." (R. 172.) Plaintiff discontinued physical therapy because she felt it was not providing much relief and because of financial considerations. (R. 51.)

Since that time, Plaintiff has seen a chiropractor three times per week for muscle stretching and adjustments. (R. 50.) She pays $35 per month for these services. (R. 51.) Chiropractor Robbin Mitchell reported that Plaintiff's muscles were "very contracted [which] lends to the constant aching and intermittent shooting pain in upper torso and extremities" and that any activities are

interspersed with "frequent periods of rest." (R. 140.)

Although Plaintiff has taken prescription muscle relaxers and anti-inflammatories for her symptoms, she stopped using them because "they don't help me." (R. 41.) At the time of the ALJ hearing in March 1998, Plaintiff reported she was taking only over-the-counter medications for her symptoms, including vitamins, Ibuprofen, Excedrin and Tylenol PM. (R. 43.) At the recommendation of her chiropractor, she has also undergone occasional electro-muscle stimulation, acupuncture, and traction. (R. 50.)

On March 26, 1997, at the request of the Bureau of Disability Determination Services, Plaintiff underwent a Consultative Examination ("CE") by Dr. Vinod G. Motiani. (R. 264.) Dr. Motiani reported that Plaintiff complained of pain and difficulty walking for more than 15 minutes at a time. (Id.) His physical examination revealed that Plaintiff had a full range of motion in her wrists, elbow and shoulder, and that her C-Spine forward flexion was normal. (R. 265.) She also had a lateral rotation of about 45 degrees "following which she gets discomfort in the nape of her neck." (Id.) Lateral bending was 15 degrees and rotary movements were about 70 degrees with some discomfort in the lower

back. *(Id.)* He characterized her gait as "normal" and noted that she could "get up from a laying down position without difficulty." He further assessed her coordination as "unimpaired":

> She can lift things. She can open door knobs, carry paper, carry small objects without any difficulty as noticed during the examination. Examination of the muscular system essentially has showed that palpation of the nape of the neck muscles, the trapezius, rhomboids, latissimus, dorsi, chest muscle, costochondral junction, proximal thigh muscles did elicit significant tenderness, even on moderate to deep palpation.

(R. 266.) In conclusion, he stated that, "[t]here are no significant medical records for my review; however, this being a diagnosis of exclusion, the possibility definitely does exist of Fibromyalgia." *(Id.)*

On April 17, 1997, Dr. Frank Norbury conducted a non-examining Residual Functional Capacity ("RFC") Assessment of Plaintiff. (R. 267-74.) He noted that Plaintiff complained of "diffuse muscle aches," chronic fatigue, and pain in an intensity of seven on a one-to-ten scale. (R. 274.) Dr. Norbury's review of Plaintiff's exertional limitations concluded that Plaintiff could carry up to 10 pounds occasionally; stand or walk at least 2 hours in an 8 hour work day; sit about 6 hours in an 8-hour work day; and that she had a normal C-Spine rotation. (R. 268, 274.) Dr. Norbury determined

that Plaintiff only had occasional postural limitations in climbing, kneeling, stooping, crouching and crawling, but that these actions could be "painful" more than one-third of the time. (R. 269.) He further noted that Plaintiff had no manipulative, visual, communicative or environmental limitations. (R. 270-71.)

B. ALJ Hearing

At the March 11, 1998 ALJ hearing, Plaintiff testified that the symptoms of Fibromyalgia, as described above, have prevented her from working full-time at secretarial jobs. (R. 36-39.) Specifically, Plaintiff complained of increasing difficulty in completing the tasks associated with her job, such as filing, (R. 37) and typing. (R. 48.) Plaintiff also testified that she was "unable to do anything for long periods of time" without having to take constant breaks. (R. 42.)

Plaintiff's husband also testified at the hearing, reporting that, since his wife's Fibromyalgia has progressively worsened, he has had to take on many household responsibilities that she can no longer do, such as mopping, vacuuming and doing dishes. (R. 45.)

Finally, the ALJ called upon a VE to assist in his assessment of Plaintiff's vocational outlook. (R. 53-57.) VE Edward Steffan testified that Plaintiff's work history as a secretary was

classified as a semi-skilled, sedentary position, while her roles as a bookkeeper and an administrative assistant were skilled and sedentary. (R. 55.)

In his examination of Mr. Steffan, the ALJ posed two hypothetical questions. (R. 55-56.) In the first hypothetical, the ALJ asked Mr. Steffan whether, based on the RFC conducted by Dr. Norbury, he believed someone with Plaintiff's age, work history, and education would be able to resume work. *(Id.)* Mr. Steffan responded that "[t]he hypothetical person would be able to return to all former positions." (R. 56.) In the second hypothetical, the ALJ asked Mr. Steffan to make the same determination, but now to "accept the testimony at this hearing as an accurate depiction of the hypothetical person's capabilities and limitations." *(Id.)* Under this set of facts, Mr. Steffan replied that "[m]y opinion would be that she would not be able to perform any of her former job functions," and could not be expected to adjust to other work. *(Id.)*

C. ALJ's Decision

In a decision dated May 1, 1998, the ALJ concluded that, although Plaintiff's Fibromyalgia was a severe impairment, she was not eligible for disability benefits because "claimant's former job

as secretary, as actually performed, did not have exertional and non-exertional demands in excess of her residual functional capacity." (R. 17.)

In support of this decision, the ALJ summarized Plaintiff's medical and work history, as well as the testimony provided at the hearing. (R. 14-16.) He further relied on the Disability Determination Service's RFC, which indicated that the claimant was capable of performing sedentary work. (R. 17.) The ALJ also relied on the VE's answer to his first hypothetical, in which the VE concluded that an individual with similar characteristics and medical history likely could return to work. (*Id.*)

Since Plaintiff's impairment was not a listed impairment under the statute, the ALJ considered her "subjective allegations," noting that these could be sufficient to support a disability claim "provided they are credible." (R. 16); *see also* 20 C.F.R. § 404.1529 (West 2001). Nonetheless, the ALJ concluded that Plaintiff's testimony concerning her impairments and their impact on her ability to work was not credible because "it was inconsistent with itself, the objective findings, her daily activities, as well as her pursuit of treatment and non-use of medications." (R. 16.)

## Standard of Review

In reviewing the Commissioner's (here the ALJ's) decision, the court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Rather, the court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g), where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ must consider all relevant evidence and may not select and discuss only that evidence that favors his ultimate conclusion. (*Id.*) Where conflicting evidence allows for reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner (or ALJ), not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible). The court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Erhart v. Sec. of Health and*

*Human Services*, 969 F.2d 534, 538 (7th Cir. 1992).

However, this does not mean that the Commissioner (or ALJ) is entitled to unlimited judicial deference. In addition to relying on substantial evidence, the ALJ must articulate his analysis at some minimal level and state his reasons for accepting or rejecting "entire lines of evidence," although he need not evaluate in writing every piece of evidence in the record. *See Herron*, 19 F.3d at 333; *see also Young v. Sec. of Health and Human Services*, 957 F.2d 386, 393 (7th Cir. 1992) (ALJ must articulate his reason for rejecting evidence "within reasonable limits" if there is to be meaningful appellate review); *Guercio v. Shalala*, No. 93 C 323, 1994 WL 66102, at *9 (N.D. Ill. March 3, 1994) (ALJ need not spell out every step in his reasoning, provided he has given sufficient direction that the full course of his decision may be discerned) (citing *Brown v. Bowen*, 847 F.2d 342, 346 (7th Cir. 1988)).

## Analysis

To qualify for Social Security Disability Insurance Benefits, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than twelve months." 42 U.S.C. §
1382c(a)(3)(A) (West 2000). In addition, the Social Security
Regulations prescribe a sequential five-part test for determining
whether a claimant is disabled. *See* 20 C.F.R. § 404.1520 (West
2001). The ALJ must consider: (1) whether the claimant is
presently unemployed; (2) whether the claimant has a severe
impairment or combination of impairments; (3) whether the
claimant's impairment meets or equals any impairment listed in the
regulations as being so severe as to preclude substantial gainful
activity; (4) whether the claimant is unable to perform his past
relevant work; and (5) whether the claimant is unable to perform
any other work existing in significant numbers in the national
economy. *Id.; see also Young*, 957 F.2d at 389. A finding of
disability requires an affirmative answer at either step 3 or step
5. A negative answer at any step (other than step 3) precludes a
finding of disability. *Id.* The claimant bears the burden of proof
at steps 1-4, after which the burden shifts to the Commissioner at
step 5. *Id.*

In the case *sub judice*, the ALJ concluded that Plaintiff
satisfied step 1 of the test because she had been unemployed since

July 1996. (R. 14.)[3]    The ALJ also determined that Plaintiff satisfied step 2, since her alleged impairment, Fibromyalgia, was "severe" under the meaning of the statute.    (*Id.*)[4]    However, because Fibromyalgia is not one of the impairments specifically listed in the Social Security regulations (20 C.F.R. Part 404, Subpart P, Appendix 1), Plaintiff was unable to automatically satisfy Step 3 of the inquiry. (*Id.*)

Therefore, the ALJ continued to step 4.    When an alleged impairment is not recognized by the Social Security regulations, the ALJ's determination must rely solely on a credibility assessment of the claimant's allegations about the intensity and persistence of the pain. *See Aidinovski v. Apfel*, 27 F. Supp. 2d 1097, 1103 (N.D. Ill. 1998).    In this instance, the ALJ concluded

---

[3] Although Plaintiff admitted that she had worked "on and off" at a temporary agency from July 1996 until October 1996, the ALJ determined that these activities did not constitute "substantial gainful activity" since they resulted in less than $200 per month in earnings.    (R. 14.)   The regulations required $500 in earnings at the time of the hearing. *See* 20 C.F.R. § 404.1574(b)(2)(West 2001).

[4] Social Security regulations specify that an impairment is "severe" if it "significantly limits your physical or mental ability to do basic work activities."   20 C.F.R. § 404.1520(c). The ALJ concluded that the evidence supported Plaintiff's complaint of a severe impairment, since Fibromyalgia "can cause significant vocationally relevant limitations."    (R. 14.)

that "claimant's statements concerning her impairments and their impact on her ability to work are not credible." (R. 18.) As a result, the ALJ ceased the inquiry at Step 4, concluding that Plaintiff was not disabled, and could return to her past relevant work, because "claimant's former job as a secretary, as actually performed, did not have exertional and nonexertional demands in excess of her residual functional capacity." (R. 17.)

In arguing that the ALJ's decision is erroneous, Plaintiff makes four arguments in support of her Motion for Summary Judgment. Specifically, Plaintiff argues that: (1) the ALJ's hypothetical to the VE incorrectly omitted consideration of nonexertional impairments due to pain and fatigue caused by Fibromyalgia; (2) the ALJ failed to fully develop the record with respect to these nonexertional limitations; (3) the ALJ relied too heavily on an RFC assessment conducted by a nonexamining state physician; and (4) the ALJ's finding that Plaintiff's testimony was not credible was erroneous because it lacked a "logical bridge" from the evidence provided to the conclusions drawn.

For the reasons set forth below, the Court finds Plaintiff's first three arguments unpersuasive, but finds merit in her last one, because the ALJ, in attacking Plaintiff's credibility, relied

on erroneous characterizations of the record, and relied too heavily on insignificant discrepancies in her testimony. Although no one of these errors, by itself, is grounds for remand, the combined impact of them renders the Court unable to discern the ALJ's reasoning for his finding that Plaintiff's testimony was not credible. As a result, the Court cannot find that the ALJ's decision was based on substantial evidence, and orders that the case be remanded for further consideration.

With respect to Plaintiff's first argument, the Court finds that the ALJ's hypotheticals to the VE adequately considered the nonexertional impairments associated with Fibromyalgia. Hypothetical questions posed to a VE are required to set forth the claimant's impairments "to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir. 1994)(citation omitted). Moreover, hypotheticals need not take into account "every detail of the claimant's impairments," especially if the record demonstrates that the VE reviewed all the evidence prior to the hearing. *Id.* Thus, even where an ALJ does not specifically refer to Plaintiff's nonexertional limitations in his hypothetical, it is not automatic grounds for reversal. *Id.; see also Cass v. Shalala,* 8 F.3d 552,

556 (7th Cir. 1993).

In the case *sub judice*, during the hearing, the VE testified that he had reviewed all the evidence in the record, and that he listened to all of Plaintiff's testimony. (R. 55.) The record, including the medical documentation in the CE and RFC, included Plaintiff's complaints about her pain and fatigue. (R. 264, 274.) Therefore, because the VE fully reviewed the record, he was aware of Plaintiff's complaints of nonexertional pain and fatigue. Consequently, there was no need for the ALJ to specifically highlight these symptoms in the hypothetical.[5] *See, e.g., Herron, supra*, 19 F.3d at 337 (finding no error where ALJ framed hypothetical to VE, without reference to the plaintiff's complaints

---

[5] Plaintiff insinuates that the VE did not consider her nonexertional impairments, because the physical RFC in the record only covered exertional impairments. However, the physical RFC pertains to *both* nonexertional and exertional impairments. For instance, the RFC considers postural, manipulative, communicative, visual and environmental limitations, all of which are nonexertional. (R. 269-72.) Also, regardless of whether pain, in this case, is a nonexertional or exertional impairment, the critical point is that Dr. Motiani fully considered Plaintiff's pain, noting on the RFC that Plaintiff suffers from "diffuse muscle aches, pain is 7 on scale of 1-10 ... also chronic fatigue.") (R. 274.) Furthermore, as discussed in more depth *infra*, the ALJ's second hypothetical – asking the VE to credit Plaintiff's testimony at the hearing – necessarily encompassed Plaintiff's complaints of pain and fatigue.

of drowsiness, finger immobility or sensitivity to air conditioning, because VE testified that he had reviewed the medical record before the hearing).

The Court also rejects Plaintiff's second argument, finding that the ALJ did, indeed, adequately develop the record with respect to Plaintiff's nonexertional limitations. Nonexertional limitations are those aspects of an impairment which affect a claimant's ability to meet demands, other than strength demands, of a job. *See* 20 C.F.R. § 404.1569a(c)(1) (West 2001). In the case at bar, Plaintiff underwent a physical RFC assessment that accounted for nonexertional limitations, such as those that were postural, manipulative, communicative, visual and environmental in nature. (R. 269-72.) Overall mental abilities, such as the ability to concentrate, understand and remember, were also taken into consideration in her RFC assessment. (*Id.*) (As discussed *supra* at footnote 3, Dr. Motiani also noted, on the RFC assessment, that he considered Plaintiff's complaints of pain and fatigue.)

Although Plaintiff argues that the ALJ failed to develop the record with respect to nonexertional impairments, the Court finds that the ALJ properly considered Plaintiff's alleged nonexertional limitations, such as pain and fatigue. After all, pain and fatigue

are the most prominent symptoms associated with Fibromyalgia, and the ALJ did, in fact, find that Plaintiff suffers from Fibromyalgia at Step 2 of the inquiry. Furthermore, despite Plaintiff's urging, the ALJ was not required to consider her alleged nonexertional impairments of memory loss or depression, since Plaintiff did not specifically list those impairments in her initial claim, and, moreover, did not provide medical evidence to substantiate those claims. *See, e.g., Scott v. Callahan*, 977 F. Supp. 856, 868 (N.D. Ill. 1997)(finding that proof of a mental impairment must be established "by medical evidence, consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms.")(quoting 20 C.F.R. § 404.1508 (West 2001)); *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1499 (10th Cir. 1992)(finding that "testimony alone cannot establish a nonexertional impairment"). In sum, because Plaintiff's medical records and testimony mentioned pain and fatigue, and because these symptoms were assessed on the physical RFC assessment, the Court finds that Plaintiff's nonexertional limitations were adequately developed in the record.

The Court further rejects Plaintiff's contention that the ALJ should have ordered a psychological evaluation to more fully

develop the record with respect to her nonexertional limitations. The ALJ may use his discretion in deciding whether a consultative evaluation of a claimant should be ordered, and it is only recommended when the medical evidence presented is insufficient or incomplete. *See* 20 C.F.R. § 404.1519a (West 2001). In this case, a mental assessment was not required, because Plaintiff failed to set forth any mental impairments as the cause of her alleged disability. *(See* Disability Report at R. 84-127.) Testimony alone cannot establish a nonexertional impairment; it must be present in the medical or administrative record prior to the claim being made. *Hamilton, supra*, 961 F.2d at 1499 (rejecting plaintiff's claims of fatigue because they were put forth only at the hearing and not substantiated by evidence in the record). Significantly, in Section 2 of her disability claim form, Plaintiff merely listed Fibromyalgia as her disabling illness, and did not list any specific mental impairments. (R. 85.) Therefore, the Court finds that the ALJ was not required to order an independent psychological assessment of Plaintiff.

Furthermore, the Court rejects Plaintiff's third argument, finding that the ALJ appropriately relied on the RFC assessment conducted by a nonexamining state physician. The Social Security

regulations do not require that examining physicians conduct the RFC assessment. *See* 20 C.F.R. § 404.1546 (West 2001). The regulations do, as Plaintiff attests, direct the ALJ, generally, to give more weight to examining over nonexamining physicians. *See* 20 C.F.R. § 404.1527(d) (West 2001). However, the distinction between examining and nonexamining doctors is rendered moot where, as here, the assessments put forth by both doctors are not in conflict with each other.

In the case *sub judice*, both the examining physician, Dr. Motiani, and the nonexamining physician, Dr. Norbury, found that Plaintiff exhibited pain and limited mobility, likely as a result of Fibromyalgia. (R. 266, 269.) Neither concluded that she was disabled, although Dr. Norbury determined that her impairments would not prevent her from returning to her previous work. (R. 269.) While Dr. Motiani did not make a similar assessment, this does not create a conflict with Dr. Norbury's findings, as Dr. Motiani was not asked to draw such a conclusion in his consultative examination. In any event, assuming there was a conflict, the ALJ decides which evidence should be accorded more weight. *See* 20 C.F.R. § 404.1527(d).

Nonetheless, despite Plaintiff's first three unpersuasive

arguments, the Court finds that the ALJ did not provide adequate support to his finding that Plaintiff's testimony lacked credibility.    Decisions by administrative agencies cannot be upheld if "the reasons given by the trier of fact do not build a logical bridge between the evidence and the result." *Sarchet*, *supra*, 78 F.3d at 307.   Although the ALJ has broad discretion in assessing the credibility of the claimant's statements, his "findings must be articulated to some degree in order to afford meaningful judicial review." *Olson v. Apfel*, 17 F. Supp. 2d 783, 791 (N.D. Ill. 1998)(citation omitted).

In an inquiry such as this one, where subjective symptoms are at the heart of the claim, assessing a claimant's credibility becomes even more critical.   Regulations forbid an ALJ from dismissing allegations of pain and other subjective symptoms solely because they are not substantiated by objective medical evidence. *See Aidinovski, supra,* 27 F. Supp. 2d at 1103.   Thus, subjective assessments of disabling symptoms by Plaintiff, if credible, may be sufficient to support a finding of disability.   Although the elusive nature of subjective ailments creates challenges for the trier of fact, these inquiries into the intangible demand that ALJs conduct an impartial and open-minded inquiry.   Accordingly, the

Seventh Circuit has openly criticized ALJs whose opinions were marred by "a pervasive misunderstanding" of subjective afflictions like Fibromyalgia. *Sarchet*, *supra*, 78 F.3d at 306.[6]

In his decision, the ALJ clearly states that, "I did not find her testimony credible because it was inconsistent with itself, the objective findings, her daily activities, as well as her pursuit of treatment and non-use of medications." (R. 16.) In support of this conclusion, the ALJ cites three examples of how Plaintiff undermined her own veracity. (R. 16-17.) The Court finds that the combined weight of these examples is unconvincing and insufficient to sustain a conclusion that Plaintiff's testimony was not credible.

First, the ALJ implies that he is skeptical of Plaintiff's claims of pain, because she is "taking no medications, not even inexpensive over-the-counter analgesics." (R. 16.) However, during the hearing, the ALJ specifically asked Plaintiff whether

---

[6] However, the holding in *Sarchet* should not be read as a blanket directive that all Fibromyalgia claims must rise to the level of disability. Instead, the Court is reminded that "[a]lthough *Sarchet* also involved a claimant with Fibromyalgia, it was a unique case with a confluence of several serious errors by the ALJ." *Weinberg v. Apfel*, 1998 WL 295492, at *6 (N.D. Ill. May 22, 1998).

she was taking "any over the counter medications" and Plaintiff

responded, "Yes, I do. I take PM medication, something equivalent

to Tylenol PM as a sleep aid, and I take Ibuprofen, Excedrin, all

of those kinds of things just to try to help with the pain." (R.

43.)  Furthermore, Plaintiff also listed those medications on her

original application for disability benefits.  (R. 95.)  Thus, the

ALJ's use of this example is wholly unpersuasive, since it is based

on an inaccurate assessment of the record.[7]  *See, e.g., Olson,*

---

[7] Defendant's brief makes no attempt to correct the ALJ's
error, and instead offers an unsupported medical opinion as an
explanation:

> Plaintiff's claim that she was not helped by any treatment,
> including use of medications such as muscle relaxants, anti-
> inflammatories and pain medication, is not confirmed by any
> medical reports and is somewhat suspect because Plaintiff
> testified that she took over-the-counter pain medication
> such as Ibuprofen and Excedrin. It is unclear why Plaintiff
> could be helped by over-the counter pain medication, but not
> by stronger prescription medication.

*See* Defendant's Memorandum in Support of Motion for Summary
Judgment at 14.  This logic, while perhaps convincing, was not a
rationale put forth by the ALJ in his opinion, and thus does not
provide insight into his reasoning.  Moreover, Defendant's
skeptical attitude toward Plaintiff's choice of over-the-counter
medications, in lieu of prescription drugs, is not supported by
the case law. *See Green v. Apfel*, 204 F.3d 780, 782 (7th Cir.
2000) (finding that Plaintiff's choice to use over-the-counter
drugs, instead of prescription medication, "cannot be thought
compelling evidence of lack of severity of pain").

*supra*, 17 F. Supp. 2d at 791 (reversing ALJ's decision in Fibromyalgia case, noting that because ALJ made incorrect factual determination that the plaintiff was working part-time, court was unable to determine whether this mistake of fact influenced the ALJ's decision regarding Plaintiff's overall credibility). In sum, the Court does not know, in assessing Plaintiff's credibility, how much weight the ALJ placed on this incorrect factual determination.

In his second example, the ALJ noted that, while Plaintiff testified that she could stand or walk "at most fifteen to ten minutes," she later stated that "she shops for periods of up to 45 minutes." (R. 16.) While Plaintiff did, indeed, make both of these statements, it is not clear that they are contradictory, given the context in which the statements were made. Plaintiff testified that walking is made more difficult when "my spasms are real bad." (R. 39.) She also stated, "I can't do anything for long periods of time" and must "rest frequently during the day." (R. 42.) Plaintiff later explains that she goes grocery shopping occasionally, but must have her groceries loaded into the car for her, and have her husband help put them away upon returning home. (R. 53.) The ALJ asked Plaintiff for a further explanation of her grocery shopping:

| ALJ: | "[H]ow long would you say you spend at the store grocery shopping?" |
|---|---|
| Plaintiff: | "Maybe 45 minutes." |
| ALJ: | "And when you come home, how do you feel?" |
| Plaintiff: | "Really bad. I'm very fatigued. I get really tired." |
| ALJ: | "And what do you do when you come home from the store?" |
| Plaintiff: | "I rest." |
| ALJ: | "How long do you need to rest after you go out shopping for 45 minutes? |
| Plaintiff: | "Probably an hour. I'd say 30 minutes to an hour." |

(R. 52.) The Court does not find that Plaintiff's differing accounts of how long she can spend walking — as opposed to grocery shopping — sufficient to completely undermine her credibility.[8] One court has noted that the "many interviews and forms required to apply for disability benefits should not be viewed as traps for slightly varied accounts of daily activities." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Where a plaintiff's testimony is not "wildly inconsistent," but rather "represents a minor

---

[8] The Court is similarly unimpressed by the ALJ's assertion that "[s]he stated she had to break up any undertaking into segments in order to not cause muscle spasm and pain; however, she had good days such that she is able to watch her grandson during the weekends." (R. 16.) These statements may, in fact, be contradictory, if the circumstances of each situation were analyzed in more detail. But without more, they do little to buttress the ALJ's conclusions.

variation in her account of her daily life," it will only "provide some small support for a finding of incredibility." *Id.* Here, a 45-minute occasional trip to the grocery store, after which nearly an hour of rest is needed, does not directly contradict Plaintiff's earlier and repeated statements in the record that walking is difficult, and that she must take frequent rest breaks.[9] Thus, the Court finds Plaintiff's somewhat differing statements on this matter to be mere "minor variations" and not "wild inconsistencies," and believes they should be given only some weight in the overall credibility determination.

In his third example of how Plaintiff's statements lacked credibility, the ALJ states, unequivocally, that "[h]er testimony that she can't afford medical treatment is not credible [since] she is able to afford calcium with zinc, vitamin B complex and multiple vitamin." (R. 16.) The Court finds this reasoning unpersuasive.

---

[9] In arguing that Plaintiff's impairments are exaggerated, Defendant provides further examples, from the record, and fleshes out how Plaintiff's statements are not credible. (*See* Defendant's Memo. at 13-14.) Whether these are valid impeachments of Plaintiff's testimony, however, is not relevant, since the ALJ did not discuss these examples in his opinion. In other words, in assessing whether the ALJ properly analyzed Plaintiff's credibility, the Court reviews only those arguments made by the ALJ in his opinion.

First, during the hearing, Plaintiff testified that she ceased treatments at the Concord Physical Therapy Center because "friends of mine were paying for my visits because I have no insurance coverage to help me, and it just got towards the end of it, after I had been there ... where it inflamed me more than helped me toward the end." (R. 51.) She further testified that she was able to seek weekly treatments from a chiropractor only because she had acquired a special contract under which she paid $35 per month for unlimited visits. *(Id.)* At no time during the hearing did the ALJ probe further into Plaintiff's financial situation, and the record does not reflect any reason why Plaintiff's statements about her financial hardship should be doubted. Moreover, the ALJ's assertion that Plaintiff's purchase of "vitamins" undermines her claim of financial hardship is equally unfounded. On this point, the Court agrees with Plaintiff, that the ability to purchase vitamin supplements does not necessarily indicate the ability to finance other types of medical treatment.[10]

---

[10] Moreover, the 1996 Social Security Regulations Policy Interpretation directs the ALJ that, while "[t]he explanations provided by the individual may provide insight into the individual's credibility," the ALJ should take into consideration whether "[t]he individual's symptoms may not be severe enough to prompt the individual to seek ongoing medical attention or may be relieved with over-the-counter medications.... The individual may

In conclusion, the ALJ's reliance on inaccurate and insignificant evidence to support his finding that Plaintiff's testimony was not credible is not supported by substantial evidence. Ultimately, if the ALJ has legitimate and persuasive explanations for why he found Plaintiff's testimony to be suspect, they were not readily apparent in his opinion. Hence, this case is remanded for further consideration so that those reasons, if they exist, may be delineated more fully in a subsequent opinion.

### Conclusion

The Court finds that the ALJ's finding that Plaintiff is not disabled is not supported by substantial evidence. Accordingly,

IT IS HEREBY ORDERED that the Commissioner's Motion for Summary Judgment be, and the same hereby is, denied.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment be, and the same hereby is, denied in part and granted in part.

---

not take prescription medication because the side effects are less tolerable than the symptoms...The individual may be unable to afford treatment and may not have access to free or low-cost medical services." 1996 SSR 96-7P, 1996 WL 374186, * at 7-8. (S.S.A.) If the ALJ had some other reason for doubting Plaintiff's credibility on this issue, it is not apparent from the opinion, and should be further detailed upon remand.

IT IS FURTHER ORDERED that the case be remanded to the Commissioner for proceedings not inconsistent with this opinion.

Dated: March 12, 2001    E N T E R:

ARLANDER KEYS

United States Magistrate Judge